UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DOUG CORLEY,

          Plaintiff,

vs.                              Case No.   8:04-CV-1341-T-MSS

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,

          Defendant.
_____/

## ORDER

Plaintiff brings this action pursuant to the Social Security Act (the "Act"), as amended, Title 42, United States Code, §§ 405(g) and 1383(c)(3), to obtain judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying claims for disability insurance benefits and supplemental security income under the Act.

The Undersigned has reviewed the record, including a transcript of the proceedings before the Administrative Law Judge ("ALJ"), the exhibits filed, the administrative record, and the pleadings and memoranda submitted by the parties in this case.

**I.**    **BACKGROUND**

    **A.  Procedural History**

Plaintiff applied for disability insurance benefits and supplemental security

1

income in February 1995 and July 1996. Plaintiff alleged an onset of disability on October 7, 1993, due to diabetes (mellitus), shoulder injury, alcohol abuse, numbness, hand pain, depression and blindness in his right eye. (T. 18). His claims were denied by an administrative law judge ("ALJ") on February 26, 1998. (Tr. 64-74). However, the Appeals Council remanded the decision for further proceedings on February 26, 1999. (T. 257-260). A new decision denying Plaintiff's claims was issued on January 28, 2000. (T. 308-336). On February 13, 2002, the Appeals Council remanded the case again for additional proceedings, this time specifically directing that consideration of Plaintiff's possible mental impediment be considered. (T. 338-340).

After remand by the Appeals Council, a new hearing was held (the "ALJ Hearing") and the ALJ issued a decision on May 22, 2003 (T. 14-31) in which the ALJ stated that Plaintiff had filed additional applications for benefits in April 2001 and had been found disabled as of February 11, 2000 (the "ALJ Decision")(T. 17). Thus, the issue before the ALJ was whether Plaintiff was disabled at any time from October 1993, when he alleged disability, to February 11, 2000, the onset date as established in his subsequently filed application. The ALJ concluded that Plaintiff was not disabled during the relevant period. (T.18). Plaintiff then appealed to the Appeals Council, and the Appeals council denied Plaintiff's request for review and Plaintiff filed this action for review.

### B. Medical History and Findings Summary

Plaintiff's medical history is set forth in the ALJ Decision. By way of summary, Plaintiff was forty-nine years old when the ALJ Decision was issued in May 2003. Plaintiff completed high school but testified that he was in some special classes for English beginning in the tenth grade. (T. 122, 379-382. 560-563.697). Plaintiff further

2

reported that he had attended trade school for diesel mechanic training. (T. 122, 569, 624).  Plaintiff's past work experience included jobs as a dredge operator, heavy equipment operator and welder. (T. 122, 570, 572-574, 623).

After considering the evidence, including medical records from Plaintiff's treating and examining physicians, the ALJ found that Plaintiff does have impairments that are severe within the meaning of the Regulation, but not severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4.  (T. 29, Finding No. 3).

The ALJ evaluated Plaintiff's residual functional capacity ("RFC") to determine if he could return to his past relevant work or other work existing in significant numbers in the national economy.  The ALJ found that although Plaintiff could not perform his past relevant work, he had the RFC to perform a significant range of light work throughout the relevant period. (T. 30, Finding No. 12).   As such, the ALJ concluded that Plaintiff is not disabled under the Act. (T. 30, Finding No. 14).

**II.    STANDARD OF REVIEW**

In an action for judicial review, the reviewing court must affirm the decision of the Commissioner if it is supported by substantial evidence in the record as a whole.  42 U.S.C. § 405(g).  Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).  If there is substantial evidence to support the Commissioner's findings, this Court may not decide the facts anew or substitute its judgment as to the weight of the evidence for that of the Commissioner.  See Goodley v. Harris, 608 F.2d 234, 236 (5th Cir. 1979).

No similar presumption of validity attaches to the Commissioner's legal conclusions; rather the Court reviews the application of law de novo. See Davis v. Shalala, 985 F.2d 528, 531 (11th Cir. 1993). If an error of law was committed by the Commissioner, the case must be remanded to the Commissioner for application of the correct legal standard. See McDaniel v. Bowen, 800 F.2d 1026, 1029-1030 (11th Cir. 1986); Smith v. Heckler, 707 F.2d 1284, 1285 (11th Cir. 1983). If the reviewing court is unable to determine from the Commissioner's decisions that the proper legal standards were applied, then a remand to the Commissioner for clarification is required. See Jamison v. Bowen, 814 F.2d 585, 588 (11th Cir. 1987).

Here, Plaintiff asserts two points of error: (1) that the ALJ erred in finding that Plaintiff's mental impairments did not meet or equal the requirements of the Listings of Impairments at 20 CFR Part 404, Subpart P, Appendix 1, § 12.05(C), and (2) that the ALJ gave insufficient weight to the opinion of Plaintiff's treating physician, Dr. Kong. For the reasons that follow, the Court affirms the decision of the Commissioner.

### III. DISCUSSION

#### A. Whether the ALJ erred in finding that Plaintiff's mental impairments did not meet or equal the requirements of the listing § 12.05(C)

Plaintiff claims first that the Commissioner erred in finding that Plaintiff did not meet the requirements of Listing 12.05(C) for mental retardation. Plaintiff is incorrect.

Listing 12.05 defines mental retardation as "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." The Eleventh Circuit has held that absent evidence of sudden trauma that can cause retardation, valid IQ tests create a rebuttable

4

presumption of a fairly constant IQ throughout life. Hodges v. Barnhart, 276 F.2d 1265, 1268-69 (11th Cir. 2001). However, the Eleventh Circuit has recognized that a valid IQ score need not be conclusive of mental retardation if the score is inconsistent with other evidence in the record about the claimant's daily activities and behavior. Lowery at 837 (citing Popp v. Heckler, 779 F.2d 1497, 1499 (11th Cir. 1986)) (rejecting a claim of section 12.05(C) mental retardation where the claimant's I.Q. score of 69 was inconsistent with evidence that he had a two-year college associates degree, was enrolled in a third year of college as a history major and had worked in various technical jobs). Thus, the Commissioner may present evidence of the claimant's daily life to rebut the presumption of disability. Hodges at 1269. According to Lowery, "[a]lthough the ALJ is allowed some leeway to evaluate other evidence when determining the validity of an IQ score, an ALJ may not consider a claimant's age, education and work experience after the ALJ accepts the IQ score as valid and finds that the claimant meets or equals the criteria of a listed impairment." Lowery at 837 (citing Ambers v. Heckler, 736 F.2d 1467, 1470 (11th Cir. 1984)) (stating that "consideration of the fact that [claimant] could return to her past work is not a relevant inquiry once she has met the Listing of Impairments in Appendix 1").

In general a claimant meets the criteria for "presumptive disability" under Listing 12.05(C) by presenting, "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05(C). See Crayton v. Callaghan, 120 F.3d 1217, 1219-20 (11th Cir. 1997); see also, Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992). The word "significant" as used in Listing

5

12.05(C), requires the claimant to prove only that the additional impairment is more than "slight or minimal." Baneky v. Apfel, 997 F. Supp 542, 544 (S.D.N.Y. 1998).

As a threshold matter, it must be acknowledged that the ALJ's opinion in this case does contain the following inconsistent statements regarding Plaintiff's mental capacity:

>  1)     "The medical evidence indicates that the claimant **already had mental retardation, alcohol abuse, diabetes mellitus (DM), arm arthralgias and right eye blindness, by history, in 1993-00,** impairments that were severe within the meaning of the Regulations but not severe enough to meet or     m e d i c a l l y equal one of the impairments listed  in   . . . [the] Regulations . . . ." (T. 20) (emphasis added).
>
>  2)     "Hence, psychosis cannot be confirmed between 1993 and 2000 and any [organic brain syndrome] would have begun after the [established onset date]. . . **and the claimant does not meet the specifications for mental retardation at step three of the sequential evaluation process**." (T. 21).

While the ALJ in the former statement seems to acknowledge that Plaintiff was mentally retarded in the relevant period, the remainder of his decision, with this one noted exception, is consistent with the ALJ's latter finding that Plaintiff "does not meet the specifications for mental retardation at step three of the sequential evaluation process."

The ALJ began his analysis by acknowledging "[a]s seen above, the latest psychologist [Dr. Mercer] did obtain sub-Listing 1.05© [sic] readings of below 71 . . ." (T. 21). However, instead of accepting this low IQ score's validity, the ALJ questioned the score on several grounds, each of which is addressed below. Throughout his decision, the ALJ never accepted the validity of Dr. Mercer's assigned IQ score.

First, the ALJ questioned the validity of the IQ test as administered by Dr. Mercer. The ALJ stated that Plaintiff scored much higher on the Block Design sub-test. Dr. Mercer himself noted that the "Block Design sub-test is sometimes regarded as the

6

best single, non-verbal measure of intelligence.  As such, it may represent unrealized ability in an individual." (T. 494). In addition, Plaintiff's MMPI-2 Clinical Profile had to be invalidated, according to Dr. Mercer, because the responses resulted in a "configuration of the "Standard Validity Indicators strongly indicating his Clinical Profile to be of questionable validity." (T. 495).   Dr. Mercer also added that persons obtaining the scores that Plaintiff did may have been "exaggerating responses." (T. 495).

Second, the ALJ stated that Dr. Mercer remarked that such extraneous and variable factors as Plaintiff's diabetes and substance abuse could have influenced the results. This same analysis is reiterated by Dr. David B. Kazar during the ALJ Hearing. Dr. Kazar is a non-treating consultative physician called by the ALJ to testify as a Medical Expert during the ALJ Hearing. Dr. Kazar surmised that factors such as Plaintiff's history of diabetes, alcohol and substance abuse and depression could have resulted in lower cognitive functioning in 2000. (T. 674-675, 679, 688).

Third, the ALJ stated that because Dr. Mercer's evaluation was conducted a full year and half after Plaintiff's established onset date, it will be accorded less weight than Dr. Buss's assessment conducted mid-way through the relevant period. Dr. Buss examined Plaintiff in 1997 and found that his intellectual functioning was "low average." (T. 204).  Dr. Buss reached this conclusion based on his face-to-face interview with Plaintiff as opposed to his administration of an actual IQ test.  In addition, it is important to note that prior to Dr. Mercer's assessment of Plaintiff as "mildly mentally retarded," no other physician or psychologist who treated Plaintiff ever mentioned that Plaintiff was cognitively impaired in any way. As the Commissioner notes that "[i]t is not until Plaintiff had been diagnosed with major depression that any mention of impaired cognitive functioning was made." (Comm. Br. at 9).

Fourth, the ALJ stated that Dr. Kazar, the non-treating consultative physician the ALJ used as a Medical Expert during the ALJ Hearing, stated that Plaintiff's low IQ score is "quite out of keeping with the claimant's work record involving some supervisory experience and skilled welding duties, articulate behavior at the hearing/interview, official education and day-to-day independence, which section 12.00 now emphasizes." (T. 21). Use of this type of evidence to question to validity of an IQ score is allowed under Popp v. Heckler. As the ALJ noted, Plaintiff had an extensive (from 1972 to 1993) and varied work history in jobs classified as semi-skilled or skilled, and Plaintiff stopped working because of alleged physical and not mental deficiencies. (T. 122, 157, 609, 655, 704).

Fifth, and finally, the ALJ stated "[b]y definition, earlier better intellect would indicate no mental retardation." Dr. Kazar thus surmised at the ALJ Hearing, and the ALJ agreed, "that the earlier estimation of no worse than low average cognition (even if an informal surmise) presumably best indicates the applicant's status . . . ." (T. 21). The ALJ ultimately concluded that "the record does not support Dr. Mercer's supposition two years after 2000 that the cognitive impediments that he found were 'life long.'" (T. 23).

As noted above, the Eleventh Circuit has held that absent evidence of sudden trauma that can cause retardation, valid IQ tests create a rebuttable presumption of a fairly constant IQ throughout life. Hodges, 276 F.2d at 1268-69. In this case, the ALJ found that Plaintiff "was in special education, although he nominally had a 'high school (or high school equivalent) education.'" (T. 30). Evidence of special education classes would normally lend credence to the supposition that Plaintiff's mental retardation is "life long." However, in this case, special education classes would also support a finding similar to Dr. Buss' that Plaintiff's intellectual functioning was "low average." As Plaintiff

8

acknowledged, "[w]hen Dr. Buss estimated low average, his estimate was fairly close to the actual scores found by Dr. Mercer." (Pl. Br. at 6, n.1).

In sum, the ALJ concluded from other evidence in the record that Plaintiff's IQ score is inconsistent with his actual intellectual functioning during the relevant period, thereby calling into question the validity of the IQ test administered by Dr. Mercer and rebutting in any event the presumption that the Plaintiff was mentally retarded. As such, the ALJ properly determined that Plaintiff did not meet the first prong of section 12.05. The court finds that substantial record evidence supports this finding.

### B.   Whether the ALJ gave sufficient weight to the opinions of Plaintiff's Treating Physician, Dr. Kong

Plaintiff next contends that the ALJ erred by failing to give substantial weight to the opinions of Plaintiff's treating physician, Dr. Kong, because of Dr. Kong's "lack of specialization." Again, Plaintiff is incorrect.

The controlling body of law on the priority of medical evidence provides that the treating physician's opinion may not be rejected absent good cause to the contrary. Edwards v. Sullivan, 937 F.2d 580, 583 (11th Cir. 1991). Furthermore, that good cause finding must be set forth expressly on the face of the ALJ's opinion. "Absent a showing of good cause to the contrary, the opinions of treating physicians must be accorded substantial or considerable weight by the Commissioner." Lamb v. Bowen, 847 F.2d 698, 703 (11th Cir. 1988)(citation omitted); MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir.1986).

The reports of reviewing, non-examining physicians do not constitute substantial evidence on which to base an administrative decision. Spencer on Behalf of Spencer v. Heckler, 765 F.2d 1090, 1093 (11th Cir.1985); Strickland v. Harris, 615 F.2d 1103 (5th

9

Cir.1980); Lamb, 847 F.2d at 703 ("The opinions of non-examining, reviewing physicians, . . . when contrary to those of examining physicians are entitled to little weight in a disability case, and standing alone do not constitute substantial evidence.") Further, the good cause required before the treating physicians' opinions may be accorded little weight is not provided by the report of a non-examining physician where it contradicts the report of the treating physician. Johns v. Bowen, 821 F.2d 551 (11th Cir.1987). This priority, known as the "treating physician rule," is borne out of the notion that treating physicians generally have more knowledge of the medical history of their patients and in that capacity are best qualified to assess the nature of the claimed disability. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).

Plaintiff claims that the ALJ dismissed Dr. Kong's opinion because of Dr. Kong's "lack of specialization." (T. 25). While it is true that lack of specialization is one of the reasons given in the ALJ's May 2003, decision, Plaintiff fails to note that the ALJ disregarded Dr. Kong's assessment of Plaintiff because it was rendered in 1999, two years after he last saw Plaintiff in 1997 and because, Dr. Kong's conclusions regarding Plaintiff's functional capacity were inconsistent with the objective medical evidence and opinions of other treating physicians, such as Dr. Maury Fisher, contained in the record. (T. 319-320). The ALJ previously addressed Dr. Kong's opinion in a January 2000 decision that was incorporated by reference into the current decision and correctly discounted it for the reasons cited above. (T. 19). The Court finds therefore that the ALJ properly found Dr. Kong's opinion was not entitled to great weight.

10

**IV.     CONCLUSION**

The decision of the ALJ in this case is supported by substantial evidence and consistent with legal standards. The Commissioner's decision is **AFFIRMED**. The Clerk is directed under Rule 58 to enter judgment in favor of Defendant and to **CLOSE** this case.

**DONE** and **ORDERED** in Tampa, Florida on this 29th day of September 2005.

MARY S. SCRIVEN
United States Magistrate Judge

Copies to:

Counsel of Record